**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SPIRIT AIRLINES, INC., *et al.*,<br><br>Debtors. | Chapter 11 Case<br><br>Case No. 24-11988 (SHL)<br><br>(Jointly Administered)<br><br>**Ref. Docket No. 53** |

| | | |
|---|---|---|
| ZIM AIRCRAFT CABIN SOLUTIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SPIRIT AIRLINES, INC., *et al.*,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | AP No. 24-_____ |

## ADVERSARY COMPLAINT

Plaintiff Zim Aircraft Cabin Solutions, LLC ("Zim"), creditor in the above-captioned bankruptcy case, files this Complaint seeking a declaratory judgment that Defendant Spirit Airlines, Inc. ("Spirit") breached its contract with Zim and that the contract is terminated. In support thereof, Zim alleges and states as follows below.

### NATURE OF THE MATTER

The Uniform Commercial Code requires that parties to a contract for the sale of goods exercise good faith and act in accordance with commercial reasonableness. UCC § 2-311; Fla. Stat. Ann. § 672.311. Parties owe each other a duty of cooperation, and when cooperation by one

party is necessary to or materially affects the other party's performance, but is not seasonably forthcoming, the other party is relieved from performing its obligations under the contract.

Zim and Spirit entered into a contract for the sale of goods on October 8, 2021 that required such cooperation. Pursuant to the contract, Spirit agreed to purchase a certain number of goods – aircraft seat shipsets ("Shipsets") – over a six-year period until the end of 2027. It was commercially reasonable that Spirit's annual orders would not exceed Zim's production capacity and the availability of material in the supply chain. To that end, Spirit sent Zim an aircraft delivery schedule to serve as the basis for a commercially reasonable shipping and delivery schedule.

Spirit has not complied with its obligations under the contract or the UCC. Over the past three years, Spirit's annual orders for Shipsets have been far below the aircraft delivery schedule. Then, in the month before its bankruptcy, Spirit communicated to Zim that it wanted to defer all Shipset purchases in 2025 and 2026 and resume purchases again in 2027-2029. That means that Spirit had abandoned its commercially reasonable delivery schedule and its contractual obligation to purchase by December 31, 2027.

Spirit's conduct repudiated the explicit terms of the contract and Spirit's duty of cooperation under the Uniform Commercial Code. Because Spirit has repudiated the contract, Zim seeks a declaratory judgment stating that the contract has been cancelled.

## JURISDICTION, AUTHORITY, AND PARTIES

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).

2. Venue is proper before this Court in accordance with 28 U.S.C. §§ 1408 and 1409.

3. This matter is a noncore proceeding because, among other things, Zim has not filed a proof of claim. However, should Zim file a provisional proof of claim, at least some of the issues in this case may be core.

2

4. Zim consents to the jurisdiction of this Court in this matter for all pre-trial matters but does not consent to the jurisdiction of this Court to enter a final judgment. *Stern v. Marshall*, 564 U.S. 462 (2011).

5. Zim is a limited liability company organized and existing under the laws of North Carolina with its principal office in Greensboro, Guilford County, North Carolina. Zim develops, constructs, and manufactures aircraft seats for commercial airlines.

6. Zim was formerly called HAECO Cabin Solutions, LLC ("HAECO").

7. Spirit is a limited liability company organized and existing under the laws of Delaware with a principal office in Dania Beach, Broward County, Florida. Spirit identifies itself as a leading low-cost carrier in the airline industry.

**FACTUAL BACKGROUND**

**I.    HAECO and Spirit Enter into a Purchase Agreement**

8. On October 8, 2021, HAECO and Spirit entered into a Purchase Agreement. HAECO agreed to sell and Spirit agreed to purchase new Vector Light Economy and Vector Premium seats (the "Products") for Spirit's new A319/A320/A321 aircraft. Spirit agreed to purchase one hundred (100) Shipsets of Products ("Shipsets") by December 31, 2027.

9. Manufacturing and delivering Shipsets require significant resources and time. Production also depends on the availability of materials in the supply chain. The Purchase Agreement specifically provides that Zim requires a lead time of one-hundred and eighty (180) days to deliver up to three (3) Shipsets per month and a lead time of two-hundred and seventy (270) days to delivery four (4) to six (6) Shipsets per month. *See* Section 25. Compliance with this provision depends on the parties cooperating to develop a commercially reasonable schedule for production and delivery.

3

10. The Purchase Agreement specifically contemplates that the parties would negotiate a mutually agreeable and commercially reasonable schedule for production and delivery. The Purchase Agreement further provides mechanisms to address any necessary changes to that schedule:

> 4. <u>Customer-Requested Changes</u>. If Spirit requests a change to the Products (including additional services or Products that are not set forth in Exhibit A), Supplier shall provide Spirit with a Change Request, including any potential impact to **the schedule,** price and other terms. . . .
>
> 5. <u>HAECO-Proposed Changes.</u> Supplier may propose changes to the Products for Spirit's consideration from time to time. If Spirit accepts such proposal, a description of the changes, together with any changes to **the schedule,** price or other terms, shall be documented on a Change Request. . .
>
> 6. <u>Changes due to Changes in Applicable Law or Regulations.</u> In the event that a change to the Products is required due to a change in applicable laws or regulations, Supplier shall notify Spirit in writing of such law or regulation mandating such change and will provide details in such writing of the changes required to the Products and what, if may, pricing adjustments Supplier feels may be required as a result of such change. The parties shall then negotiate in good faith an equitable adjustment in the price and **the schedule** which such changes shall be documented on a Change Request.

Purchase Agreement §§ 4-6 (emphasis added).

11. The Purchase Agreement also provides a mechanism for Spirit to adjust the schedule of deliveries—subject to a contractually prescribed limit on the extent of any delays. Specifically, Section 20 of the Agreement provides:

> 20. <u>Rescheduling</u>. Spirit reserves the right to postpone delivery dates by up to 120 days without penalty if Spirit gives notice at least 180 days prior to delivery of the Product(s).

12. The Purchase Agreement is governed by Florida law and the Uniform Commercial Code. Section 2 of the Purchase Agreement provides that:

> This Agreement (including any dispute relating to its existence, validity, or termination) shall be governed by and construed and enforced in accordance with the laws of the State of Florida, United States of America, without regard to the

4

conflict of law provisions thereof, except that the United Nations Convention on Contracts for the International Sale of Goods shall not apply.

13. Under Uniform Commercial Code Sections 2-311 (Fla. Stat. Ann. § 672.311), Spirit was required to work with Zim to develop a commercially reasonable schedule to manufacture and deliver Shipsets over the six-year period.

14. In December 2021, Spirit provided Zim with a copy of its projected aircraft delivery schedule so that Zim's production and delivery of the Shipsets could align with aircraft delivery timelines.

15. As the parties negotiated the delivery schedule in good faith, delivery was staggered over the six-year period of the Agreement.

16. However, since October 8, 2021, Spirit has only directly purchased twenty-eight (28) Shipsets.

   a. In 2023, it ordered fifteen (15) Shipsets.

   b. In 2024, it ordered ten (10) Shipsets.

   c. For 2025, it ordered three (3) Shipsets.

17. Under the explicit terms of the Purchase Agreement, Spirit is required to directly purchase seventy-two (72) additional Shipsets before December 31, 2027.

18. Zim could provide seventy-two (72) Shipsets in the next three years.

19. However, as explained in further detail below, Spirit abandoned any commercially reasonable delivery schedule for those Shipsets.

**II. Spirit Repudiates the Purchase Agreement**

20. On October 28, 2024, Zim met with Spirit to discuss Spirit's obligations under the Purchase Agreement. At this meeting, Spirit took the position that it was only obligated to purchase an additional 40 Shipsets.

5

21. As to the 40 Shipsets Spirit agreed that it was still obligated to purchase, Spirit said that it would not purchase any Shipsets in 2025 and 2026—completely abandoning the delivery schedule negotiated in good faith between the parties. Spirit instead said that it wanted to defer the Agreement and delivery schedule and then resume purchases later, extending the purchases for years after the December 31, 2027 contract expiration.

22. Zim immediately declared breach.

23. After involving attorneys, Spirit reversed course and claimed that it still intends to order 40 Shipsets for delivery before the December 31, 2027 contract expiration.

24. While Zim disagrees with Spirit's interpretation of the contract as to how many Shipsets remain to be ordered, Spirit's assertion that it would order 40 Shipsets in 2027 (or 72 Shipsets under the explicit terms of the contract) is a clear divergence from any commercially reasonable delivery schedule. Indeed, in all prior schedule negotiations, new planes were to be delivered to Spirit every quarter from 2023 through 2027 and Shipsets would be required on a staggered schedule. Spirit's assertion that it can delay purchasing 40 Shipsets until 2027 is also an express breach of Section 20 of the Purchase Agreement.

25. It is not commercially reasonable for Spirit to order 0 Shipsets in 2025, 0 Shipsets in 2026, and 40 Shipsets in 2027.

26. Under Uniform Commercial Code Sections 2-311 (Fla. Stat. Ann. § 672.311), 1-205 (Fla. Stat. Ann. § 671.204), 2-309 (Fla. Stat. Ann. § 672.309) and other UCC provisions, parties to a contract for the sale of goods have a duty to cooperate in accordance with commercial standards to set the time for shipment when the terms of the contract are silent as to specific shipping and delivery schedules.

27. Spirit repudiated the Purchase Agreement when it said that it would not meet its obligation to complete all purchases by December 31, 2027.

28. As to its revised position after engaging lawyers, Spirit breached the duty to cooperate in accordance with commercially reasonable standards to set specific shipping and delivery schedules when it claimed that it could enter into a contract for the delivery of 100 Shipsets over six years and then meet its obligations by loading up its purchases of Shipsets in the last year of the contract.

29. To obtain reasonable assurance of future performance under the UCC, Zim asked whether Spirit would agree to a commercially reasonable shipping and delivery schedule, among other contract modifications. Spirit, in further breach of the UCC and repudiation of the contract, refused to engage in commercially reasonable discussions.

**III.    Relevant Written Correspondence Regarding Contract Repudiation**

30. On November 6, 2024, Zim sent a letter to Spirit notifying Spirit that it was in material default of Section 2 of the Purchase Agreement. Zim stated that Spirit has failed to place orders for the purchase of the minimum 100 Shipsets of Products by December 31, 2027. A true and correct copy of the November 6 letter is attached as Exhibit A.

31. On November 18, 2024, Spirit filed its voluntary petition for bankruptcy.

32. Following a post-petition discussion between Spirit and Zim, counsel for Spirit sent a letter stating that Spirit had commenced a voluntary bankruptcy case and that Zim could not terminate the contract on November 25, 2024. A true and correct copy of the November 25 letter is attached as Exhibit B.

33. Counsel for Zim responded reiterating that Spirit repudiated the Purchase Agreement pre-petition by letter dated December 3, 2024. A true and correct copy of the December 3 letter is attached as Exhibit C.

7

34. On December 10, 2024, counsel for Spirit sent a letter to Zim asserting that there was no anticipatory repudiation. A true and correct copy of the December 10 letter is attached as Exhibit D.

**FIRST CLAIM FOR RELIEF**
(Declaratory Judgment of Termination of the Purchase Agreement)

35. The foregoing paragraphs are realleged and incorporated by reference as if restated herein.

36. Zim and Spirit entered into the Purchase Agreement under which Spirit agreed to purchase 100 Shipsets from Zim from October 2021 through December 31, 2027.

37. The Purchase Agreement is a valid and enforceable contract governed by and construed and enforced in accordance with the laws of the State of Florida.

38. At all times, Zim complied with the terms and conditions of the Purchase Agreement.

39. Spirit repudiated and breached Section 2 of the Purchase Agreement when it stated that it was only obligated to purchase forty (40) additional Shipsets under the Purchase Agreement.

40. By asserting that Spirit would not purchase any Shipsets in 2025 and 2026 and wanted to defer purchases for years after December 31, 2027, Spirit repudiated the Agreement.

41. Spirit's revised position that it can demand that Zim manufacture and deliver forty (40) Shipsets in 2027 is also a repudiation of the Agreement. By loading a large number of purchases in the last year of the Agreement, Spirit diverged from all good faith cooperation and is refusing to provide a commercially reasonable timeline for orders, production, and delivery.

42. By demanding that Zim manufacture and deliver forty (40) Shipsets in 2027, Spirit also breached its duty of cooperation and good faith and fair dealing under UCC § 2-311 and Fla. Stat. Ann. § 672.311 (and other obligations under Florida's Uniform Commercial Code).

8

43. Zim was entitled to resort to any right or remedy under UCC § 2-610 and Fla. Stat. Ann. § 672.610 when Spirit communicated its overt intention to not comply with the Purchase Agreement and obligations under the UCC.

44. Spirit also breached Section 20 of the Purchase Agreement when it deferred delivery of Shipsets scheduled for 2025 and 2026 by more than 120 days into 2027 and beyond.

45. Zim had the right to cancel the contract, pre-petition, based on Spirit's repudiation, under UCC § 2-610, UCC § 2-703, Fla. Stat. Ann. § 672.610, and Fla. Stat. Ann. § 672.703.

46. There is a substantial and continuing justiciable controversy between Zim and Spirit with respect to the issue of whether the Purchase Agreement was terminated.

47. Zim is entitled to a declaratory judgment that the Purchase Agreement is terminated and the parties no longer owe each other any contractual obligations.

## CONCLUSION

WHEREFORE, Plaintiff Zim Aircraft Cabin Solutions, LLC respectfully requests that the Court:

1. Enter a declaratory judgment finding that Spirit breached and repudiated the Purchase Agreement with Zim and that the Purchase Agreement is terminated.

2. Order Spirit to pay to Zim its reasonable costs and expenses, including attorneys' fees, incurred in the litigation of this action;

3. Tax the costs of this action against Spirit;

4. Provide a trial by jury as to all issues so triable; and

5. Grant such other and further relief as the Court deems just and proper.

9

Respectfully submitted, this the 13th day of December, 2024.

/s/ Daniel Adams
Daniel Adams
  N.Y. State Bar No. 4785978
dadams@brookspierce.com

Clint S. Morse
  N.C. State Bar No. 38384
  cmorse@brookspierce.com
(*pro hac vice forthcoming*)

Katarina K. Wong
  N.C. State Bar No. 55040
  kwong@BrooksPierce.com
(*pro hac vice forthcoming*)

BROOKS, PIERCE, MCLENDON,
  HUMPHREY & LEONARD LLP
230 North Elm Street, Suite 2000
Greensboro, NC 27401
Telephone: 336-271-3109
Facsimile: 336-232-9109

*Counsel for Zim Aircraft Cabin Solutions, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing will be served on the following parties by certified mail and email:

Jasmine Ball
Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
jball@debevoise.com

Robert Dehney
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19899
rdehney@morrisnichols.com

Marshall Scot Huebner
Davis S. Klein
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
marshall.huebner@davispolk.com
darren.klein@dpw.com

*Counsel for Spirit Airlines, Inc.*

Shara Claire Cornell
DOJ-Ust
1 Bowling Green
New York, NY 10004-1408
shara.cornell@usdoj.gov

*Counsel for United States Trustee*

This the 13th day of December, 2024.

/s/ Daniel Adams
Daniel Adams